## BALDWIN v. OSKALOOSA GAS LIGHT CO.

57 51
96 614
97 349

57 51
d119 477

1. **Nuisance**: FINDINGS OF JURY: STATUTE OF LIMITATIONS. Where, in an action for damages for the erection and use of gas. works, the jury found the works were of a permanent character, but considered they were incompetent to decide whether such erection and use were a permanent injury to plaintiff's property; *Held*, the jury intended and found thereby that the injury was of a permanent character, and began when the works were erected and used; and that the action was barred in five years after such erection and use.

2. ———: INSTRUCTIONS. The instructions should have stated clearly and explicitly what damages were recoverable for, and that a party is only liable for the nusiance caused by himself.

*Appeal from Keokuk District Court.*

MONDAY, OCTOBER 24.

ACTION to recover damages for a nuisance. The petition states: The gas works of defendant were erected in 1872, and that "defendant in manufacturing gas ever since that time causes and creates unwholesome, noisome and offensive smells which  *  *   all caused, created and permitted by the defendant, to the great injury of the plaintiff, rendering her property uninhabitable and worthless." In a second count it was stated that "the defendant manufactured gas in such a careless, negligent and unskillful manner in not keeping its machinery in proper repair, and in not using the latest and best improved machinery, and in using the poorest and most worthless substances for the manufacture of the same, and in using none of the machinery or appliances usually and commonly used to prevent the escape of noisome, unwholesome and offensive smells, causes, creates and permits "such smells to escape in such quantities as to render plaintiff's homestead and property worthless." The third count need not be set out as no damages were found under it. In an amendment to the petition, it was stated the nuisance referred to in the original petition has wholly destroyed the rents and profits of plaintiff's premises. The defendants denied the allegations of the petition and amendment, and pleaded the statue of limitations. Afterward the plaintiff withdrew so much of the amendment to the petition as claimed damages because of a loss of rents and profits.

Trial by jury. There was both a general and special verdict. On the latter the defendant moved for judgment, but was overruled and judgment entered on the general verdict for the plaintiff. The defendant appeals.

*C. P. Searle, John F. Lacey* and *Lafferty & Johnson*, for appellant.

*Bolton & McCoy*, for appellee.

SEEVERS, J.— I. The plaintiff is the owner of certain lots on which there is a dwelling house near the works of the de-

1. NUISANCE: findings of jury: statute of limitations.

fendant. It is regarded as being beyond controversy, from the evidence introduced, instructions and special verdict, that the cause was tried in the court below on the theory: First, That the nuisance was of a permanent character and the property of the plaintiff rendered thereby "uninhabitable and worthless;" and Second, That the plaintiff was entitled to recover for the "depreciation of the rental" value of the property caused by the nuisance. The cause has been argued in this court on such theories, and we shall take the case as it has been put to us by counsel, without stopping to inquire why it was so tried below or argued here.

Among the special interrogatories put to the jury is the following, which was answered by them as stated thereunder:

"8th. Do you find from the evidence under the instructions of the court that the gas works were so built as to ·be regarded as permanent, and was the erection and beginning of the use thereof a permanent injury to plaintiff's property?

Ans. We, the jury, from the evidence and instructions of the court, regard the gas works as permanent, but consider ourselves incompetent to decide whether or not their erection and use is a permanent injury to the plaintiff's property, as ways and means *may* possibly be devised to operate them in such a manner that they *may* cease to be regarded as a nuisance."

If the works were of a permanent character, and the erection and beginning of the use thereof a permanent injury to the plaintiff's property, then the cause of action is barred by

the statute, because the works were erected in 1872, and this action was not commenced until 1878.

The jury found the works were permanent. Whether the injury was of the same character depended, in the opinion of the jury, whether ways and means might not in the future be devised so that the works should cease to be regarded as a nuisance. From the questions put to the jury, and answer thereto, we think it reasonably clear the jury intended to and did find the nuisance and injury were of a permanent character, and that the same began when the works were erected. There was evidence so tending, and we do not understand counsel for the appellee to claim the verdict is susceptible of any other construction. The point made by counsel for appellee is, that because the jury have found means may be devised whereby the works would cease to be a nuisance, therefore it cannot be said it is of a permanent character. But we are of the opinion the jury had no right to speculate as to what might take place in the future. It was their duty to determine only as to existing facts, and leave the uncertain future to take care of itself. The rights of these parties cannot be predicated on the future, what may take place, or the ingenuity of man may devise, but on existing things. Now, as the jury have found the injury or nuisance was of a permanent character, a right of action accrued at the time the injury began, especially is this true if the premises were rendered "uninhabitable and worthless," as alleged in the petition. For such permanent injury, the plaintiff was entitled to recover all the damages sustained in one action, and therefore the action was barred, and the court should have rendered judgment for the defendant on the special verdict. *Powers v. Council Bluffs*, 45 Iowa, 652.

II. Upon the theory the plaintiff was entitled to recover for depreciation in the rental value of the property, the jury were instructed as follows: "And further on this point—if the gas works when erected

2. ——:
instructions.

were not of a permanent character, or the usual and ordinary manner of operating such works would not cause a nuisance, and damage to the property of the plaintiff, then she can recover for the depreciation of the rental value arising from the property, within five years prior to the 12th day of November, 1878."

We have had much difficulty in determining the meaning of this instruction. Our doubts being, whether the jury could have understood they were authorized to allow damages not only for the offensive smells, but also because of the erection of the works themselves. Now, as it is not claimed in the petition the works were a nuisance, but they became such only by reason of their offensive character, the jury should have been directed in clear and explicit terms that damag. s for the latter only could be recovered. Should there be a re-trial, an instruction should be given in accord with these views.

III. There was evidence tending to show there was a railway track near the premises, and offensive smells were caused by passing engines, and that such smells were caused by what is called "Seibel's ditch." At the request of the plaintiff, the court instructed the jury as follows:

"If you find that other nusiances existed in the same neighborhood and you also find that defendant's works added to the nuisance so that they essentially interfered with plaintiff's comfortable enjoyment of life or property, she is entitled to recover."

There is no doubt that defendant is only responsible for the smells or nusiance created or caused by it. Under the foregoing instruction, the jury would be justified, or at least may have found the plaintiff was entitled to recover for a nuisance caused by others than the defendant. The instruction is not as clear and specific as it should be. Whether we would reverse, for this reason, if there were no other errors in the record, we need not determine.

REVERSED.