GLANDON v. THE CHICAGO, MILWAUKEE & ST. PAUL R'Y CO.

68    457
127   727

1. **Railroads:** WANT OF FENCE: ROAD IN PROCESS OF CONSTRUCTION: LIABILITY FOR STOCK KILLED. The moving of trains over a railroad for whatever purpose, (construction trains in this case,) is operating a railroad within the meaning of § 1239 of the Code, and renders the company liable for stock killed or injured on account of a failure to fence the track. It is not essential to such liability that the road be completed and open to traffic; nor can the company claim exemption for any time, after it begins the movement of trains, on the ground that it should have a reasonable time after the construction of the road within which to build its fences.

*Appeal from Keokuk District Court.*

TUESDAY, APRIL 6.

THIS is an action for double the value of two colts, one of which the plaintiff claims was killed, and the other injured so that it was of no value,—the injury having been caused by a train of cars upon a railroad operated by the defendant. There was a trial by jury, which resulted in a verdict and judgment for plaintiff for double the damages sustained by him. Defendant appeals.

*Chambers, McElroy & Carver,* for appellant.

*Sampson & Brown,* for appellee.

ROTHROCK, J.—The petition in the case was in three counts. Two of them claimed the right of recovery under the double damage statute, and the other claimed a common-law liability for negligence in operating the train. No consideration need be given to the last-named cause of action, because the jury based their verdict upon the statute.

The facts are not in dispute. It appears from the evidence that the defendant, in constructing its railroad from Cedar Rapids to Ottumwa, laid its track through a pasture field of the defendant, on Monday. The injury occurred on the next Saturday. The defendant laid its track from both ends of the road at the same time. The track-laying force from the south laid the track through the pasture, and met the force from the north several miles from plaintiff's farm, and the two working gangs connected the tracks on the evening after the injury, so as to make a through line between the points above named. From the time the track was laid through the pasture up until the injury the defendant used a construction train, which made two round trips a day along the line and through the pasture, and which train carried iron rails, ties and other track-laying materials. The colts were injured by this train. The right of way was not fenced, and the jury were fully warranted in finding that the animals were injured by reason of the want of a fence.

The court, among other instructions to the jury, gave the following: "No. 6. If at the time of the alleged killing and injury the defendant had completed its railroad through the farm of plaintiff, so that it was running a construction train and engine over the same to aid in the completion of the road beyond plaintiff's farm, and had been so running the same for several days prior to the time of such alleged killing and injury, then it was a corporation operating a railway, within the meaning of the law, notwithstanding it was not, and had not been, open for general traffic, or for carrying frieght or passengers for hire." The defendant excepted to this instruction, and requested the court to charge the jury

to the effect that there could be no liability for failure to fence until the road was completed for traffic thereon, and that a reasonable time should be allowed after the completion of the road to enable defendant to erect the fences. These instructions were refused, and the defendant excepted, and this question is the only one necessary to be determined.

Section 1289 of the Code provides that " any corporation operating a railway, that fails to fence the same against live-stock running at large, at all points where such right to fence exists, shall be liable to the owner of any such stock injured or killed by reason of the want of such fence for the value of the property or damage caused, unless the same was occasioned by the willful act of the owner or his agent.     *     *     * "   The primary object of this statute is to reimburse the owners of live-stock killed or injured by the operation of a railroad.   It does not require the railroad company to fence its road, but leaves it optional to do so, or to be absolutely liable, under the conditions named, for all damages for live-stock injured or killed by the operation of the road.   The moving of trains over a railroad, for whatever purpose, is operating a railroad within the meaning of the statute.   It seems to us that it is wholly immaterial whether the train is used for carrying construction material for the further extension of the road, or in carrying passengers or freight for hire.   Live-stock are exposed to the danger contemplated by the statute just the same in one case as in the other.   The argument that a reasonable time must be given to the company after laying down the track to fence the line is based upon the inconvenience of fencing until the whole line of road is completed.   We do not think the question of convenience should be considered.   It is a question for the company to determine whether it will construct the fences when it commences to run trains over the road, or take the risk of liability for killing or injuring stock until such time as it shall be convenient to fence; and it may well be said that it is no more inconvenient to trans-

port the fencing material than it is to ship the iron rails, ties and other material necessary for laying the track. We have examined the authorties cited by counsel for appellant, and we do not think they hold any doctrine not in accord with what we here determine. We do not believe a review of them to be necessary.

AFFIRMED.